IN THE UNITED STATES DISTRICT COURT IN THE WESTERN DISTRICT OF
VIRGINIA:

| | |
|---|---|
| **KATHLEEN M. CONLON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | _5:23-cv-00040_____ |
| **HILDA L. BABER** ) | |
| ) | |
| **STEPHEN W. WRIGHT** ) | |
| ) | |
| **Lee BHM Corp. d/b/a The Daily Progress** ) | |
| A Virginia Corporation, ) | |
| Serve: Corporation Service Company ) | |
| 100 Shockoe Slip, FL 2, ) | |
| Richmond, VA 23219 ) | |
| ) | |
| **Keen Communications, LLC** ) | |
| An Alabama Limited Liability Company, ) | |
| Serve: Secretary of the Commonwealth ) | |
| Robert Sehlinger ) | |
| 2204 1st Avenue South, STE 102 ) | |
| Birmingham, Alabama 35233 ) | |
| ) | |
| **The Rowman & Littlefield Publishing** ) | |
| **Group, Inc.** ) | |
| a Delaware Corporation ) | |
| Serve: Secretary of the Commonwealth ) | |
| R/A Cogency Global, Inc. ) | |
| 850 New Burton Road, STE 201 ) | |
| Dover, Delaware, 19904 ) | |
| ) | |
| **Menasha Ridge Press, Inc,** ) | |
| A Delaware Corporation, ) | |
| Serve: Secretary of the Commonwealth ) | |
| R/A The Corporation Trust Company, ) | |
| 1209 Orange Street, ) | |
| Wilmington, Delaware 19801 ) | |
| ) | |
| **Shenandoah National Park Association,** ) | |
| A Virginia Nonstock Corporation ) | |
| Serve: Greta Miller ) | |
| 3655 US HWY 211 E, ) | |
| Luray, Virginia 22835 ) | |

**THE MOUNTAINEERS,**                                          )
    A Washington Nonprofit Corporation             )
    Serve: Secretary of the Commonwealth          )
    R/A Paul Stevenson                            )
    7700 Sand Point Way, NE                       )
    Seattle, Washington 98115                     )
                                                  )
                                                  )
**POTOMAC APPALACHIAN TRAIL CLUB**                           )
    A Virginia Non-stock Corporation              )
Serve: Joseph F. Lombardo                                     )
    118 Park Street, SE,                          )
    Vienna, Virginia 22180                        )
                                                  )
**NATIONAL PARK SERVICE,**                                    )
    A Federal Agency                              )
    SERVE: Christopher R. Kavanaugh                )
        United States Attorney,              )
        Western District of Virginia         )
        255 W. Main Street, STE 130          )
        Charlottesville, Virginia 22901      )
                                                  )
    Sent Via Certified Mail:                      )
        Merrick Garland,                    )
        United States Attorney General       )
        950 Pennsylvania Avenue, NW,         )
        Washington, D.C. 20530-0001         )
                                                  )
    Sent Via Certified Mail:                      )
        Charles F. Sams III                 )
        National Park Service Director       )
        1849 C Street NW                    )
        Washington, D.C. 20240              )
                                                  )
        **Defendants,**                     )
                                                  )

---

# COMPLAINT[1]

---

[1] This case was previously brought in the Circuit Court of Augusta County, identified as case number CL-20002988 against Defendants Hilda L. Baber and Stephen W. Wright. Upon Defendant Baber's motion, the Circuit Court of Augusta County, ordered National Park Service and each of Defendant Publishers, as defined in Paragraph 12, be added as necessary parties to the action. Pursuant to the jurisdictional rules under the Federal Torts Claim act, this required Plaintiff to non-suit her pending claims in Virginia state court and refile before this Court.

COMES NOW Plaintiff, Kathleen M. Conlon, by counsel, and for her complaint against the Defendants, Hilda L. Baber, Stephen W. Wright, Lee BHM Corp. d/b/a The Daily Progress, Menasha Ridge Press, Inc., Keen Communications, LLC, The Rowman & Littlefield Publishing Group, Inc, Shenandoah National Park Association, The Mountaineers, Potomac Appalachian Trail Club, and the National Park Service, a United States sub-agency, and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff  Kathleen M. Conlon ("Conlon") is an individual resident of Augusta County Virginia and owns land across which the private roads of Wild Turkey Lane and Black Bear Lane cross in Crimora, Virginia. Plaintiff Kathleen M. Conlon

2.      Defendant Hilda L. Baber ("Baber") is an individual residing at 1215 East Side Highway, Waynesboro, VA 22980, and who owns property contiguous to Conlon's on Wild Turkey Lane, in Crimora, Virginia.

3.      Defendant Stephen W. Wright ("Wright") is an individual residing at 553 Locust Avenue, Waynesboro, VA 22980, and who owns a parcel of real estate where Black Bear Lane and Wild Turkey Lane separate in Crimora, Virginia.

4.      Defendant Lee BHM Corp., d/b/a The Daily Progress ("Defendant Daily Progress") is a Virginia Corporation which operates and publishes a newspaper based in Charlottesville, Virginia, called "The Daily Progress."

5.      Wilderness Press, Inc. was a California Corporation which published a wide variety of books including those on hikes within the Commonwealth of Virginia and sells them to Virginia residents. On information and belief, in or around 2014, Wilderness Press, Inc publications and the right to sell said publications were sold to Defendant Keen Communications, LLC, and Wilderness Press, Inc. was terminated as an entity.

6.     Defendant Keen Communications, LLC ("Defendant Keen") is an Alabama limited liability company which publishes a wide variety of books including those initially published by Menasha Ridge Press, Inc., and Wilderness Press, Inc. including those on hikes within the Commonwealth of Virginia and sells them to Virginia residents.

7.     Defendant The Rowman & Littlefield Publishing Group, Inc., ("Defendant Rowman") is a Delaware Corporation which publishes a wide variety of books, including those on hikes within the Commonwealth of Virginia, and sells them to Virginia residents.

8.     Defendant Menasha Ridge Press, Inc, is a Delaware Corporation which publishes a wide variety of books including those on hikes within the Commonwealth of Virginia and sells them to Virginia residents.

9.     Defendant Shenandoah National Park Association is a Virginia Nonstock Corporation which publishes a variety of materials relating to Shenandoah National Park within the Commonwealth of Virginia.

10.    Defendant The Mountaineers is a State of Washington Non-Profit Corporation which publishes a variety of materials, including those on hikes within the Commonwealth of Virginia and sells them to Virginia residents.

11.    Defendant Potomac Appalachian Trail Club, Inc., is a Virginia Non-stock Corporation, which publishes a variety of materials, including those on hikes within the Commonwealth of Virginia and sells them to Virginia residents.

12.    Defendant Daily Progress, Defendant Menasha Ridge Press, Inc, Defendant Keen, Defendant Rowman, Defendant Shenandoah National Park Association, Defendant The Mountaineers, and Defendant Potomac Appalachian Trail Club, Inc, will be referred to hereinafter collectively as "Defendant Publishers."

4

13.    Defendant National Park Service ("NPS") is a United States sub-agency under the Department of the Interior which owns land neighboring a parcel owned by Montgomery R. Gochenour ("Gochenour") in Virginia and nearby to the Plaintiff's property, commonly referred to as Shenandoah National Park. NPS was the owner of certain trail markers placed on the land of Defendant Wright and Defendant Baber. NPS publishes maps, access points, and other materials online which are available to the public and Defendant Publishers. NPS employees and agents have made misrepresentations to law enforcement in the course of their employment with NPS which have prevented Plaintiff from enforcing her legal rights against trespassers.

a.    On October 24, 2022, pursuant to the Federal Tort Claims Act, 28 U.S.C. §2675, and 28 C.F.R. §14.2-4, and 43 C.F.R. Subtitle A §22.3, Plaintiff submitted a Notice of Claim to Shenandoah National Park Superintendent Patrick Kenney. *See* **Exhibit 1(a)**. This Complaint was filed after a rejection of the claim was received. See **Exhibit 1(b)**. The facts and allegations included in the Notice against Shenandoah National Park are hereby incorporated by reference.

14.    This action arises from nuisances existing on the land of Baber and Wright causing harm and trespasses by the Defendants and Third-Parties on Conlon's land within Augusta County, Virginia.

15.    The publishing of certain materials encouraging trespasses (and thus exacerbating the nuisance) by Defendant Publishers, and the publishing of certain materials and directions encouraging the trespasses and nuisance by NPS have increased the damages suffered by Conlon.

16.    Prior to the filing of this action, actual notice of the nuisances was provided to Defendant Wright and Defendant Baber on July 16, 2020, and September 3, 2020.

17.    Prior to filing of this action, actual notice of the nuisances was provided to NPS on several occasions, and specifically to meet legal requirements by **Exhibit 1**, and at a meeting with Augusta County officials and Park officials on August 20, 2020.

18.    Prior to the filing of this action, actual notice of the nuisances was provided to Defendant Keen, Defendant Menasha Ridge Press, Inc., and Defendant Rowman. This notice demanded each Defendant remove the offending publications from circulation by no later than August 2020.

19.    None of the offending publications from each of the Defendants has been removed from circulation, and such publications remain available for purchase from Defendant Keen, Defendant Menasha Ridge Press, Inc., and Defendant Rowman.

20.    Each of the offending publications made by Defendant Publishers remains available to be viewed and/or purchased in Virginia.

21.    This Court has jurisdiction over each of the claims in this Complaint pursuant to Federal Tort Claims Act 28 U.S.C. §2671 *et seq*, 28 U.S.C. §1331, 28 U.S.C. §1346, and 28 U.S.C. §1367.

22.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## FACTS

23.    Wild Turkey Lane, also known in Augusta County, Virginia as the CCC Road, Crimora Fire Road, Fire Road, and several other names is a private road, not adopted into any state road system or maintained by any state actors.

24.    Black Bear Lane, also known in Augusta County, Virginia as Black Bear

Road, is a private road, not adopted into any state road system or maintained by any state actors.

25.     Plaintiff owns land in Augusta County that is on Wild Turkey Lane and Black Bear Lane (sometimes herein collectively "Private Roads"). See **Exhibit 2**, a plat of Ms. Conlon's land dated June 12, 2006 and filed in the Land Records of Augusta County at Plat Book 1, Page 6692.

26.     Plaintiff's land is used as her primary residence and for agricultural purposes including but not limited to grazing cattle. A forestry plan is on file with Augusta County's Land Use Office outlining the agricultural uses.

27.     Plaintiff has installed a gate on Wild Turkey Lane and has posted her land on both Private Roads in very visible postings that trespassing is prohibited.  Attached as **Exhibit 3** is a group of photos that shows the clear posting of Plaintiff's land and the Private Road postings by Plaintiff and others.

28.     Plaintiff has a Power of Attorney, naming her as the attorney in fact for prohibiting trespass on two parcels of land owned by Gochenour. A copy is attached as **Exhibit 4**.

29.     Pursuant to that Power of Attorney, Plaintiff has purchased and placed signs, chains, and other materials to deter trespassers from trespassing over her property and the parcels owned by Gochenour.

30.     Defendants Hilda L. Baber and Stephen W. Wright or their predecessors in interest in the past asked NPS to install U.S. National Park Trail Monuments ("Trail Markers") on their respective properties directing the general public over the Private Roads to the Shenandoah National Park's Riprap Trail.

7

31.    The NPS installed the Trail Markers on private lands.

32.    The Trail Marker on Wright's land directed the general public down the private road, Wild Turkey Lane, through the Conlon gate and through Conlon posted land to the Trail Marker on Baber's land, and over the private road, Black Bear Lane.

33.    The Trail Marker on Baber's land directed individuals to trespass across the posted land of Gochenour via the Conlon land and private Wild Turkey Lane to enter the Shenandoah National Park.

34.    Defendant Rowman published "Hiking Waterfalls in Virginia: A Guide to the State's Best Waterfall Hikes," by Andy Thompson, which states in pertinent part "Stay on US 340 for 6.5 miles, then turn right on to CR 612. Things get a little complicated back on these gravel county roads, so be patient. Go just over 1.5 miles on CR 612, then turn left onto Black Bear Lane. Almost immediately you'll come to a fork. Stay left onto Wild Turkey Lane and drive 1 mile to where it ends at a creek called Meadow Run. You'll see No Trespassing signs all over the place, but don't worry: You can park here. The trail starts just on the other side of Meadow Run, where the Shenandoah National Park backcountry begins."

35.    Defendant Rowman published a book titled "Hiking Shenandoah National Park: A Guide to the Park's Greatest Hiking Adventures" by Bert and Jane Gildart, which shows and includes a map depicting Route 612 as a public access point to Shenandoah National Park. The map includes a "P" for an accessible parking location, which is only accessible by trespassing over private roads and over the land of Conlon and Gochenour.

36.    Defendant Keen Communications, LLC published four (4) books, two (2) books originally published by Wilderness Press, Inc. and two (2) books originally published by Defendant Menasha Ridge Press, Inc. directing the public over the Private Roads, and the

Gochenour and Conlon properties. The first and second books published by Defendant Keen and Defendant Menasha Ridge Press, Inc "Day & Overnight Hikes, Shenandoah National Park Second Edition" by Johnny Molloy and "Day & Overnight Hikes, Shenandoah National Park Third Edition" by Johnny Molloy, states in the second edition, with a nearly identical clause in the third edition, in pertinent part "DIRECTIONS: From the junction of US 250 and US 340 in Waynesboro (near Rockfish Gap) take US 340 North for 5.8 miles to VA 612. Turn right on VA 612 and follow it for 1.7 miles to Black Bear Lane. Turn Left and follow Black Bear Lane a short distance to Wild Turkey Lane. Veer left on Wild Turkey Lane and you will reach the Riprap trailhead in 1.1 mile."

37.    Defendant Keen published "Flyfisher's Guide to Virginia, Including West Virginia's Best FlyFishing Waters" by David Hart which states in pertinent part "According to a park trail manager, access can be had at the lower end by taking Route 340 north from Waynesboro for about seven miles. Turn right on 612 at Crimora, left on Black Bear Lane, and bear left to a small pull-out at the stream."

38.    Defendant Keen published, after the termination of Wilderness Press, Inc., "Shenandoah National Park: Must-Do Hikes for Everyone" by Johnny Molloy which states in pertinent part "Turn right onto VA 612 and follow it for 1.7 miles to Black Bear Lane. Turn left and follow Black Bear Lane a short distance to Wild Turkey Lane. You will see a Shenandoah National Park post here. Veer left on Wild Turkey Lane, coming to a road split at 1.0 mile and another concrete post. You can park here, near the post, or turn right and cross a rocky streambed to reach the main parking area on the far side of the streambed. This streambed crossing can be rough for some cars."

39.    Defendant Daily Progress published a newspaper article, called: "Six

Swimming Holes to Visit this Summer" by Matt Reilly on June 10, 2020, and placed the article on the Daily Progress's website. In pertinent part this article states "To reach this swimming hole, take Rt. 340 north from Waynesboro. Bear Right on Rt. 612 in Crimora and turn left onto Black Bear Lane after about two miles. No, you're not lost. When you see a "Private Road" sign keep your wits about you and look for a concrete post indicating the "Riprap Trail" on the left. Bear left and drive one mile to the trailhead. From the Riprap parking area, follow the blue blazes to the Appalachian Trail, which will lead you to the intersection of the Riprap Trail."

40.     Defendant Shenandoah National Park Association published on its website a document stating that the public could enter Shenandoah National Park in the following manner "Rip Rap- from Rt. 612 – Foot Access – Fair access; parking for 2 cars at boundary; stream crossing may be rough; limited parking allowed on private land before stream crossing. Route from Rt. 612 is not well marked."

41.     Defendant Potomac Appalachian Trail Club published "Appalachian Trail Guide to Shenandoah National Park with Side Trails, Fifteenth Edition" edited by John Hedrick, which states in pertinent part "to reach southern terminus [of the Rip Rap Trail], turn east from US 340 onto SR612 at Crimora and drive about 1.7 mi, nearly to the end of state maintenance. Follow Black Bear Road left for 1 mi. Large boulders at trailhead block trail to vehicles."

42.     Defendant Potomac Appalachian Trail Club published "Appalachian Trail Guide to Shenandoah National Park with Side Trails, Twelfth Edition" edited by Lea Sheaffer which states in pertinent part "to reach southern terminus [of the Rip Rap Trail], turn east from US 340 onto SR 612 at Crimora and drive about 1.7 mi, nearly to the end of state

maintenance. Follow Black Bear Road left for 1 mi. Large boulders at trailhead block trail to vehicles."

43.     Defendant The Mountaineers published a book called "75 Hikes in Shenandoah National Park" which states in pertinent part, "Ford the stream at 3.3 miles to continue down the left side, and soon after, pass a cascade splashing into a green pool. The trail then fords back across the stream. Continue straight down the rocky shore that was once an old roadway along the stream. You'll reach the junction at 4.0 miles (The Wildcat Ridge Trail, hike 74, is to the left; the Riprap and Wildcat Ridge Trails, along with the AT make a good loop hike of 9.3 miles). Continue straight ahead. The Riprap trail goes down along the stream, emerging from the park at 4.9 miles and connecting with a fire road (it leads left in another mile to VA 612, which is out of the community of Crimora to the west)."

44.     There is no access to the Rip Rap trail from Rt. 612 that does not cross the Conlon land and Gochenour land.

45.     Each of the above publications and the NPS trail markers directed members of the public over the Conlon and Gochenour Property, without permission or authorization from Plaintiff.

46.     Despite notice of the harm caused by the publications, Defendant Keen, Defendant Menasha Ridge Press, Inc., and Defendant Rowman took no actions to remove the offending publications from circulation.

47.     Despite the "No Trespassing Notices" and "private road" signs posted on her property and installing a gate, Plaintiff has had many confrontations with trespassers on her land and, several threatened her and her family.  She also found drug paraphernalia, evidence of illegal hunting, dumping, fires, stealing and cutting timber, alcohol cans and bottles, trash,

human waste and Covid-19 masks on her property from trespassers.

48.     After confronting trespassers, several trespassers informed Plaintiff the materials published by Defendant Publishers and NPS directed them over Plaintiffs land.

49.     In communications with NPS, NPS falsely alleged that Wild Turkey Lane was a "public right of way," despite having no basis for such claims under Virginia law.

50.     Further, NPS made false claims to Augusta County law enforcement and County officials asserting that NPS and/or the public held a public right of way over Wild Turkey Lane. As a result of these representations, Augusta County law enforcement officials refused to enforce trespassing laws on Ms. Conlon's property when she made complaints to the Sheriff.

51.     At a meeting on August 6, 2020, Counsel for the Plaintiff presented Augusta County officials and Shenandoah Park Officials with proof that under Virginia law, as set forth in *Dykes v. Friends of the CCC Road*, 283 Va. 606 (2012) that Wild Turkey Lane is a private road.

52.     NPS confirmed at that meeting that the concrete markers were placed and remained placed at direction of Defendant Baber and Wright (or their predecessors in interest) and that NPS would not remove the markers without landowner approval regardless of the significant harms caused to Ms. Conlon and her property.

53.     Despite being presented with clear, binding, and applicable Virginia law, NPS refused to remove the markers, refused to remove the published maps, and continued to allege that there was a public right of way created by some unexplained operation of law.

54.     Attached as **Exhibit 5** are photographs that show the previous location of the Trail Marker on the Land of Defendant Wright, and directed the public down either Wild

Turkey Lane or Black Bear Lane, both marked as "Private Road."

55.      Attached as **Exhibit 6** are photographs that show the previous location of the Trail Marker on the Land of Defendant Baber and directed the public over the Gochenour Property and into Shenandoah National Park.

56.      On or about, March 24, 2021, and April 5, 2021, NPS removed the trail markers.

57.      In April 2021, NPS ceased publishing some of the offending maps on it's website, however other maps still direct the public over Ms. Conlon's land. Additionally, in April 2021, NPS launched the "National Park Service" App for use on cellular phones, which re-published all of the offending maps until the app was updated in 2022.

**COUNT I – NUISANCE (AGAINST ALL DEFENDANTS)**

58.      Plaintiff incorporates all previous paragraphs as if stated herein at length and alleges further as follows:

59.      Defendants Baber and Wright, or their predecessors in interest, each asked for the installation of the Trail Marker or permitted the Trail Markers to remain and failed to seek removal of the Trail Marker after Plaintiff demonstrated that they caused third parties to trespass on Conlon and Gochenour land and requested that they be removed.

60.      The Trail Markers direct the public across the private road and through private land posted with "no trespassing" and "private road" notices belonging to Plaintiff or over which she has authority as an Agent.

61.      Defendants Baber and Wright have the duty to use their property in such a way that it will not be injurious to Plaintiff, who has the equal right to the quiet enjoyment and exclusive use of her property.

62.    Defendant Publishers aided and abetted the nuisances by publishing materials directing people over Plaintiffs land even after being put on notice of the falsity of its publications.

63.    NPS aided and abetted the nuisances by providing and installing the trail markers which directed the public over private posted and gated land into Shenandoah National Park, publishing maps and boundary access articles which falsely showed public access to Shenandoah National Park over private land, and by making false representations to law enforcement regarding the availability of public access to Shenandoah National Park over private land.

64.    Until their removal in March and April of 2021, the Trail Markers and directed the general public to proceed through a closed gate located on Wild Turkey Lane that was posted with "no trespassing" and "private road" notices and remains presently posted.

65.    The published materials remain in circulation and available for purchase, and continue to direct the general public to go through private land posted with "no trespassing" and "private road" notices.

66.    For several years, prior to June 2020, the Trail Marker and published materials directed the general public to proceed through private land posted with "no trespassing" and "private road" notices.

67.    The Plaintiff asked the Defendant Baber and Defendant Wright to remove the Trail Markers and provided notice of the damage that results from the placement of the Trail Markers and they refused.

68.    Plaintiff asked Defendant Keen, Defendant Menasha Ridge Press, Inc., Defendant Shenandoah National Park Association, and Defendant Rowman, to remove the

publications and provided notice of the damage resulting from those publications.

69.    Plaintiff asked NPS to remove the publications, remove the trail markers, and to stop making false representations to law enforcement regarding access and provided notice of the damages.

70.    The Defendants' actions of directing the general public to trespass on the land of Plaintiff constitute a private nuisance.

71.    The acts of Defendants have affected the Plaintiff's property (1) by diminishing the value of that property; (2) by interfering with her power of control or quiet enjoyment of that property; (3) by causing material disturbance or annoyance to her in her use or occupation of her property; (4) causing damage to the road, culvert, and personal property, including signage, chains, and other materials used to warn and prevent trespassers on Plaintiff's property and on Gochenour's property; and (5) causing undue stress, anxiety and other health issues, privacy and safety concerns for the Plaintiff and her family.

72.    Plaintiff has suffered damage in an amount to be proven at trial and as specified below in the pleading of damages, of not less than $500,000.

WHEREFORE, Conlon requests that the Court enter judgment against all Defendants, jointly and severally, finding they have each created and/or aided and abetted a private nuisance on the Plaintiff's land; specifically, Defendant Wright and Baber by requesting and permitting the installation of the Trail Markers and refusing to remove them after written demand from Plaintiff, Defendant NPS by installing the Trail Markers, refusing to remove them after written demand from Plaintiff, publishing materials directing people over Plaintiffs' land, refusing to remove the offending publications after notice from Plaintiff, and other actions, and Defendant The Daily Progress, Defendant Keen, Defendant Rowman

Defendant Menasha Ridge Press, Inc., Defendant Shenandoah National Park Association, Defendant The Mountaineers, and Defendant Potomac Appalachian Trail Club aided and abetted these nuisances by publishing materials directing people over Plaintiffs land, in an amount to be found at trial in excess of Five Hundred Thousand Dollars ($500,000.00), plus legal interest, attorneys fees, and any other relief the Plaintiff may show herself entitled to receive.

### COUNT II – TRESPASS (AGAINST ALL DEFENDANTS)

73.     Plaintiff incorporates all previous paragraphs as if stated herein at length and alleges further if the Court does not find a private nuisance to exist against all Defendants, then pleading in the alternative Plaintiff would show as follows:

74.     Defendant Baber and Defendant Wright directed the public to trespass on and cross the private land of Plaintiff and the private land of Gochenour, through the placement of the Trail Markers.

75.     Defendant Publishers aided and abetted the trespassers through the publication of articles and books which encouraged and directed the public to trespass on and across the private land of the Plaintiff. Additionally, several of these publications explicitly told trespassers to ignore Plaintiffs' posting of the private land.

76.     NPS directed employees to trespass over the Conlon and Gochenour land.

77.     NPS aided and abetted the trespassers through the publication of maps and boundary access articles which encouraged and directed the public to trespass on and cross the private land of the Plaintiff.

78.     NPS aided and abetted the trespassers through the placement of the Trail Markers at the request of Defendant Baber and Defendant Wright, or their predecessors in

interest.

79.    NPS aided and abetted the trespassers by making false representations to law enforcement regarding NPS's rights to use the private land, and preventing the enforcement of Virginia law against the trespassers.

80.    By these actions the Defendants are aiding and abetting the trespassers on Plaintiff's land and are therefore equally liable for the damages caused by the trespassers on her land and the land she controls.

81.    Plaintiff has suffered damage in an amount to be proven at trial and as specified below in the pleading of damages, of not less than $500,000.

WHEREFORE, Conlon requests that the Court enter judgment against all Defendants, finding they have jointly and severally aided and abetted trespassers on her land and land she controls, by having the Trail Markers installed on their private land, refusing to remove them when presented with the evidence of the trespassers, and publishing materials to encourage trespassers over the land, these actions have damaged Plaintiff in an amount to be found at trial in excess of Five Hundred Thousand Dollars ($500,000.00), plus legal interest, attorneys fees, and what other relief the Plaintiff may show herself entitled to receive.

## COUNT III 42 U.S.C. §1983, Violation of the 4th Amendment (AGAINST DEFENDANT NATIONAL PARK SERVICE)

82.    Plaintiff incorporates all previous paragraphs as if stated herein at length and pleads further as follows:

83.    NPS's direction of the public over Ms. Conlon's land and into Shenandoah National Park, by the placement of the concrete markers, publishing maps online, and re-publishing maps over the NPS App, substantially interfered with Ms. Conlon's property

17

rights, namely her ability to quietly enjoy her real property, and her ability to exclude others from her real property.

84.    NPS was on notice as of at least August 6, 2020 that there was no public right of way over Wild Turkey Lane and that members of the public were trespassing over Ms. Conlon's land with the support and direction of NPS.

85.    NPS was on notice that the maps and concrete posts encouraged trespass over Ms. Conlon's property and that the NPS's involvement would communicate to these trespassers that there were no legal barriers to their unlawful use of Ms. Conlon's property.

86.    Despite this notice, NPS refused to correct the maps or remove the posts for almost 8 months, and then re-published the same incorrect maps on their website and new mobile phone application.

87.    Further, when Ms. Conlon took steps to enforce the law against these trespassers, NPS undermined these actions by telling law enforcement that she could not enforce trespass, and made false assertions about the non-existent right of way.

88.    When NPS directed the public over Ms. Conlon's property, NPS substantially and meaningfully impacted Ms. Conlon's possessory interest. These actions, after NPS was put on actual notice that Wild Turkey Lane is a private road, were an invasive and disruptive to Ms. Conlon's property interest by violating her right of quiet enjoyment and her right to exclude the public from her private property.

WHEREFORE, Conlon requests that the Court enter judgment against Defendant NPS, finding NPS has breached Plaintiffs rights under the 4th Amendment of the United States Constitution by unreasonably seizing Plaintiffs property and that these actions have damaged Plaintiff in an amount to be found at trial in excess of Five Hundred Thousand

18

Dollars ($500,000.00) and Plaintiffs' attorneys fees and costs under 42 U.S.C §1988, plus

legal interest and what other relief the Plaintiff may show herself entitled to receive.

## DAMAGES APPLICABLE TO COUNT I, COUNT II, AND COUNT III

89.    Plaintiff incorporates all previous paragraphs as if stated herein at length and

alleges further as follows:

90.    The private nuisance and/or the trespassers on her land have injured the

Plaintiff as follows:

    a.    Damages to the roadbed, road culvert, gate, and the loss of natural
        resources used by trespassers;

    b.    Destruction of her chain across the Gochenour land after being cut by a
        National Park Service employee;

    c.    Cost of cleanup after trespassers have used and abused her land;

    d.    Cost of signage and cost of replacing damaged or stolen signage;

    e.    Loss of hardwoods and timber from two fires started by uninvited
        individuals on her land;

    f.    Loss of lumber after trespassers cut trees for firewood;

    g.    Cost to replace car parts and tractor parts taken off vehicles that were
        stored on Plaintiff's farm near the Baber Camp;

    h.    The fear Plaintiff feels of being unsafe on her on own land;

    i.    The cost to build a gate to protect her family and land;

    j.    The stress and mental anguish caused by knowing she is surrounded by
        neighbors who do not respect her rights in her land and knowingly
        allow trespassers they have encouraged to threaten her and her family

while on her land;

k. Loss of the freedom to use her land after verbal threats and social media posts from unauthorized users, who continue to believe her road is a part of the National Park as a result of the Trail Markers on Defendants' land, and publications by NPS and Defendant Publishers.

l. Damage to reputation when trespassers have called the police on Plaintiff when she was trying to enforce her rights to remove the trespassers from her land.

m. The repeated need to call police and law enforcement in an effort to enforce her property rights and dealing with the same police and law enforcement who have refused to prosecute trespassers violating the law and her property rights because of the directions provided by the Trail Markers, published maps, and other publications.

n. Time away from work to close the gate, check the property or search for cattle that exited through the open gate.

o. Loss of her right to quiet enjoyment.

p. Loss of her right to exclude others from her property.

91. Each of these elements of damage will be proven at trial.

Respectfully Submitted,
Kathleen M. Conlon
By Counsel,


/s/Timothy M. Purnell
Timothy M. Purnell, VSB #40870
PURNELL, MCKENNETT & MENKE, PC
9214 Center Street, Suite 101
Manassas, Virginia 20110
Tel. 703-368-9196
Fax 703-361-0092
tpurnell@manassaslawyers.com
*Counsel for Complainant*