IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KATHLEEN M. CONLON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 5:23-cv-00040 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| HILDA L. BABER, et al., | ) | United States District Judge |
| | ) | |
| Defendants | ) | |

**AMENDED MEMORANDUM OPINION**[1]

This case concerns a series of alleged instances of nuisance and trespass on Kathleen Conlon's property. Conlon claims that her neighbors, the National Park Service (NPS), and several publishers of maps and guidebooks "aided and abetted" these purported torts. (*See* Compl. ¶¶ 62–64, 75–80, Dkt. No. 1.) Conlon brings claims of nuisance and trespass against the United States under the Federal Tort Claims Act (FTCA), as well as a claim for violation of the Fourth Amendment under 42 U.S.C. § 1983 (*Id.* ¶ 21.) The United States has filed an amended motion to dismiss Conlon's claims for lack of subject matter jurisdiction and failure to state a claim. (Dkt. No. 93.) For the following reasons, the court will grant the United States' motion to dismiss Counts I and II for lack of subject matter jurisdiction and Count III for failure to state a claim; the court will decline to exercise supplemental jurisdiction over the remaining claims.

I.  BACKGROUND

Kathleen Conlon owns land near the Shenandoah National Park (SNP) in Augusta County, Virginia. (Compl. ¶ 25.) Conlon also has power-of-attorney over adjacent land owned by Montgomery R. Gochenour. (*Id.* ¶ 28.) Two private roads run through Conlon and Gochenour's properties: Black Bear Lane and Wild Turkey Lane. (*Id.* ¶¶ 23–25.) Conlon has

---

[1] This amended memorandum opinion further explains the court's decision regarding Count III.

marked the points at which the private roads enter her property with visible "No Trespassing" signs and installed a gate on Wild Turkey Lane. (*Id.* ¶ 27.) Pursuant to her power of attorney, Colon placed "signs, chains, and other materials to deter trespassers" from entering Gochenour's land. (*Id.* ¶ 29.)

In or around 1989, Conlon's neighbors, Hilda Baber and Stephen Wright, requested the NPS install trail markers on their properties purportedly "directing the public over the Private Roads" to the Riprap Trail in the SNP. (Notice of FTCA Claim to Patrick Kenney 2, Dkt. No. 1-3; Compl. ¶ 30.) Despite Conlon's "No Trespassing" signs and the gate across Wild Turkey Lane, hikers still entered her and Gochenour's properties. (Compl. ¶ 47.) Conlon alleges that she has found "drug paraphernalia, evidence of illegal hunting, dumping, fires, stealing and cutting timber, alcohol cans and bottles, trash, human waste and Covid-19 masks." (*Id.*) She also had "confrontations" with hikers, several of whom "threatened her and her family." (*Id.*)

In speaking with several of these purported trespassers, Conlon learned that NPS publications and maps, along with written material from several other publishers[2] ("Defendant Publishers"), supposedly directed the public to cross over the Conlon and Gochenour properties to reach the SNP. (*Id.* ¶ 48.) The NPS also allegedly represented to the public as well as to Augusta County law enforcement that Wild Turkey Lane was a public right-of-way. (*Id.* ¶¶ 48–49.) Conlon contends that as a result of these misrepresentations by the NPS, law enforcement refused to enforce trespassing laws when Conlon made complaints about trespassers on her land. (*Id.* ¶ 50.)

---

[2] The Defendant Publishers are Lee BHM Corp. d/b/a The Daily Progress, Keen Communications, LLC, The Rowman & Littlefield Publishing Group, Inc., Menasha Ridge Press, Inc., The Mountaineers, and the Potomac Appalachian Trail Club.

Conlon held a meeting with Augusta County and Shenandoah National Park officials on August 6, 2020, to present them with proof that Wild Turkey Lane was a private road and to request the trail markers and NPS maps be removed. (*Id.* ¶¶ 51, 53.) The NPS responded that it would not remove the markers without Baber and Wright's approval and did not agree to remove the maps from publication. (*Id.* ¶ 52–53.) Eventually, the NPS removed the trail markers in March and April 2021, which is also when it ceased publication of some of the maps at issue. (*Id.* ¶¶ 56–57.) However, the NPS app included the offending maps until 2022. (*Id.* ¶ 57.)

Conlon provided notice to the NPS of her intention to sue under the FTCA on October 24, 2022. (*See* Notice of FTCA Claim.) Conlon initially filed suit against Baber and Wright in the Circuit Court of Augusta County. (Compl. 1 n.1.) That court ordered Conlon to add the NPS and the Defendant Publishers as necessary parties, which required Conlon to non-suit her pending claims in Virginia state court and refile in federal court. (*Id.*) Conlon now brings claims of nuisance and trespass against all defendants and a § 1983 claim against the NPS, alleging that the NPS's purported direction of the public over her land constituted an unreasonable seizure of her property in violation of the Fourth Amendment. (*See id.*) The court will first address Conlon's claims against the government, then the claims against the other defendants.

## II. DISCUSSION

### A. The United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Legal standards

##### a. 12(b)(1) standards

Federal courts have limited subject matter jurisdiction and are empowered to act only in the specific instances authorized by Congress. *Bowman v. White*, 388 F.2d 756, 760 (4th Cir.

3

1968). Sovereign immunity issues are generally considered jurisdictional in nature and, as a result, are appropriately resolved in the context of a Rule 12(b)(1) motion. *United States v. Jones*, 225 F.3d 468, 469 (4th Cir. 2000). A motion to dismiss under Rule 12(b)(1) tests the court's subject matter jurisdiction over a plaintiff's claim. The court must determine questions of subject matter jurisdiction before it can address the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). There are two types of Rule 12(b)(1) motions—a facial attack, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie, or a factual attack challenging the existence of subject matter jurisdiction in fact, apart from the pleadings. The court considers the United States' motion to be the former type of challenge. *See Lucas v. Henrico County Sch. Bd.*, 822 F. Supp. 2d 589, 599 (E.D. Va. 2011) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In such a challenge, the court "assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration." *Id*. (citing *Adams*, 697 F.2d at 1219.)

      b.   *Sovereign immunity*

The United States is "immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal citations omitted). The federal government "has long enjoyed freedom from suit without consent." *Robinson v. United States Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019). Thus, the United States is "immune from all suits against it absent an express waiver of its immunity." *Durden v. United States*, 736 F.3d 296, 301 (4th Cir. 2013).

### 2. The FTCA misrepresentation exception

The FTCA provides "a limited waiver of sovereign immunity, making the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). Congress created several exceptions to the FTCA's waiver of the sovereign immunity, including in 28 U.S.C. § 2680(h), which precludes recovery under the FTCA for "any claim arising out of . . . misrepresentation." The Supreme Court applied the misrepresentation exception in *United States v. Neustadt*, 366 U.S. 696 (1961). There, the Court considered whether the United States would be liable under the FTCA "to a purchaser of residential property who has been furnished a statement reporting the results of an inaccurate [Federal Housing Administration (FHA)] inspection and appraisal, and how, in reliance thereon, has been induced by the seller to pay a purchase price in excess of the property's fair market value." *Id.* at 697–98. The Court found that Neustadt's claims "ar[ose] out of misrepresentation[,]" thereby precluding the respondent from recovery under the FTCA. *Id.* at 706–08.

The Supreme Court expanded upon the analysis for the misrepresentation exception in *Block v. Neal*, 460 U.S. 289 (1983). In *Block*, a borrower received a loan from the Farmers Home Administration (FmHA) to construct and purchase a home. *Id.* at 290–91. Pursuant to the loan contract, the construction was required to conform to FmHA standards, and the FmHA had the right of inspection and supervision during the construction. *Id.* at 291. The FmHA approved the plans and the construction of the borrower's home; the borrower later discovered defects in her home, which the FmHA refused to fix. *Id.* at 292. The borrower sued the FmHA for breach of contract and negligence. *Id.* at 293. The Court found that, unlike in *Neustadt*, the borrower's claims did not solely arise out of misrepresentation, explaining,

5

> The essence of an action for misrepresentation is the communication of misinformation on which the recipient relies . . . . FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent. And it certainly does not "[appear] beyond doubt" that the only damages alleged in the complaint to be caused by FmHA's conduct were those attributable to Neal's reliance on FmHA inspection reports.

*Id.* at 296–297 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The Court concluded that "the Government's misstatements [we]re not essential to plaintiff's negligence claim" and further clarified that "Section 2680(h) . . . relieves the Government of tort liability for pecuniary injuries which are *wholly attributable* to reliance on the Government's negligent [or intentional] misstatements." *Id.* at 297 (emphasis added).

Courts have gone on to apply the *Block* essentiality test to a variety of tort claims. In *White v. United States,* 53 F.3d 43, 1995 U.S. App. LEXIS 10482 (4th Cir. 1995) (unpublished table decision), for instance, the Fourth Circuit found the misrepresentation exception applied to the plaintiff's claim of negligent infliction of emotional distress against an army hospital after it purportedly misrepresented her husband's time of death and whether he received an autopsy. *Id.* at *1. The court found that the "essence" of the plaintiff's claim was the hospital's misrepresentations and found that the exception applied. *Id.* at *2. The Fourth Circuit again applied the misrepresentation exception in *Russ v. United States*, 33 F. App'x 666 (4th Cir. 2002). There, the Department of Veterans Affairs (VA) purportedly misrepresented that the builder of a ramp was a licensed contractor when he was not; the plaintiff was injured when the ramp caved in because of shoddy workmanship and sued the VA for negligence under the FTCA. *Id.* at 666–67. The Fourth Circuit agreed with the district court's finding that "despite plaintiffs' attempts to characterize their claims as being based on simple negligence, they were essentially based on a misrepresentation." *Id.* at 667. The court found that the VA's misrepresentations

6

about the contractor were "integral to Plaintiff's claims and . . . not merely incidental to other negligent conduct" and that the FTCA misrepresentation exception applied.  *Id.*

3. **Application of the FTCA misrepresentation exception**

The court finds here that the NPS's alleged misrepresentations regarding public access to Conlon's property are *essential* to her claims of nuisance and trespass against the United States. Conlon alleges several instances of misrepresentation by the NPS.  She claims that "NPS employees and agents have made misrepresentations to law enforcement in the course of their employment with NPS which have prevented Plaintiff from enforcing her legal rights against trespassers."  (Compl. ¶ 13 (emphasis added)).  Conlon further asserts that the "NPS aided and abetted the nuisances [and trespasses] by . . . making false representations to law enforcement." (*Id.* ¶ 63.)  Conlon also argues that the "NPS falsely alleged that Wild Turkey Lane [and Black Bear Lane] was a 'public right of way,'" and shared this through communications, publishing of maps, and in its placement of trail monuments.  (*Id.* ¶¶ 49, 57, 60, 77.)

The United States contends that all of Conlon's alleged damages attributed to the government flow from these misrepresentations, while Conlon argues that, like in *Block*, the government's misrepresentations are not "essential" to her claims "but rather [are] stated as a subset of the damages caused rather than a necessary element required to establish liability." (US's Am. Br. in Supp. Mot. to Dismiss 9, Dkt. No. 94; Conlon's Resp. in Opp. 6, Dkt. No. 80.) The court disagrees with Conlon's characterization.  Unlike in *Block*, Conlon has not alleged a "distinct claim arising out of other aspects of the [NPS's] conduct" other than the NPS's alleged misrepresentations.  460 U.S. at 296–97.  Conlon alleges on the face of her complaint that trespassers to her property and law enforcement officials relied upon NPS's misrepresentations of the public's access to Conlon's land when they caused her alleged damages.  (*See* Compl. ¶¶

48–50.) Under Conlon's theory of liability, but for these misrepresentations, the United States would not have aided and abetted the instances of trespass and nuisance Conlon alleges, and her alleged injuries would not have been "suffered independently" without the government's misrepresentations. *Block*, 460 U.S. at 296.

Furthermore, the fact that Conlon herself did not rely on the NPS's misrepresentations does not prevent the application of the FTCA exception. As the United States argues, and Conlon apparently concedes given her lack of response to this argument, courts have applied the misrepresentation exception in cases where a third party relied upon the government's misrepresentations. (*See* US's Am. Br. in Supp. 10.) In *Mohr v. United States*, 2009 WL 5216889 (D.S.C. Dec. 29, 2009), for example, the plaintiff alleged that a federal employee made misrepresentations to the plaintiff's employer, which led to the employer terminating the plaintiff. The court found that "the gravamen of the action is misrepresentation because it involved an alleged failure to exercise due care in communicating information." *Id.* at *2. *See also Schneider v. United States*, 936 F.2d 956, 960 (7th Cir. 1991) (holding the plaintiffs' claims, based on the government's misrepresentation to the private builder from whom plaintiffs bought their homes, were barred by the misrepresentation exception); *LabMD, Inc. v. United States*, Case No. 1:21-cv-3525, 2023 WL 2336892, at *9 n.5 (N.D. Ga. Mar. 2, 2023) ("The fact that the FTC made the allegedly false representations to third parties, rather than Plaintiff, is immaterial for purposes of the misrepresentation exception."), *appeal filed*, No. 23-11431 (11th Cir. Apr. 26, 2023).

Conlon further contests the application of the misrepresentation exception by arguing that the United States "seeks to unilaterally rewrite [her] claim in an effort to create an improper action," even though she has pled plausible claims for trespass and nuisance and has not

8

explicitly pled misrepresentation. (Conlon's Resp. 7.) The Court in *Neustadt*, however, urged courts determining whether misrepresentation is the basis for a claim to "look beyond the literal meaning of the language [of the pleadings] to ascertain the real cause of complaint." 366 U.S. at 703 (internal citations omitted). While Conlon may have pled trespass and nuisance, the "real cause" of her complaint against the United States is the NPS's purported misrepresentations. *Id.* Furthermore, the above-cited caselaw demonstrates that a plaintiff need not explicitly plead misrepresentation for a claim to fall under the FTCA exception.[3] Even though Conlon has not pled misrepresentation as an element of her tort claims, her claims of nuisance and trespass arise out of the NPS's misrepresentations; therefore, these claims fall under the FTCA misrepresentation exception.[4]

For all of these reasons, the court finds that the FTCA misrepresentation exception applies to Conlon's claims against the United States. Counts I and II will be dismissed.

## B. The United States' Motion to Dismiss for Failure to State a Claim

### 1. Legal standard

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most

---

[3] *See, e.g.*, *White*, 53 F.3d 43 at *1; *Russ*, 33 F. App'x at 666.

[4] The United States also argues that the court should dismiss Conlon's claims because the statute of limitations has expired. (*See* US's Am. Br. in Supp. 11–14.) Because the court has found it does not have subject-matter jurisdiction, it declines to address the statute of limitations argument.

favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.

### 2. Conlon's Section 1983 claim

As noted above, Conlon claims, pursuant to 42 U.S.C. § 1983, that the NPS violated her Fourth Amendment property rights when it allegedly directed the public over her property. (*See* Compl. ¶¶ 83–88.) As the court explained at the hearing, § 1983 does not apply here. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of *state* law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). The NPS is a federal sub-agency of the Department of Interior and acts under color of *federal* law; therefore, § 1983 does not apply to the NPS's actions. Furthermore, to allege that a party acted under color of state law and "implicate 42 U.S.C. § 1983, [the] conduct must be 'fairly attributable to the State[,]" not the federal government. *Debauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). *See also Cuyler v. Dep't of Army,* 2010 WL 3941606, at *3 (D.S.C. Sept. 23, 2010) ("The Defendant, a federal agency, is not subject to suit pursuant to § 1983."). Conlon attempts to argue that the NPS acted under the color of *state* law since "[f]ederal law does not control rights of access under Virginia property [law] or the determination of public rights of way[,]" yet she does not cite a single case, nor is the court aware of any case, wherein a federal agency was held liable under § 1983 under such circumstances. Conlon has failed to state a plausible claim against the government under § 1983, and the court will dismiss Count III.

### C. Jurisdiction Over the Remaining Claims

Conlon's FTCA claims against the United States conferred federal subject matter jurisdiction upon this court. 28 U.S.C. § 1331; 1346. Now that the court is dismissing the United States as a party, the court must determine whether it has jurisdiction over the remaining state-law claims.

#### 1. Diversity jurisdiction

28 U.S.C. § 1332 requires complete diversity between all parties. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806). Complete diversity requires that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). *See also Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("the citizenship of every plaintiff must be different from the citizenship of every defendant"). Conlon is a citizen of Virginia. Defendants Wright, Baber, Lee BHM Corp., and Potomac Appalachian Trail Club, Inc. are also citizens of Virginia. (Compl. ¶¶ 1–4, 11.) Therefore, the court does not have diversity jurisdiction over the remaining claims.

#### 2. Supplemental jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." The Fourth Circuit has provided that "courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In exercising its discretion, the court must consider factors of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Generally, though, when a case is in its early stages, courts will decline to exercise jurisdiction. *See* 13D Charles Alan

11

Wright & Arthur R. Miller, *Federal Practice & Procedure*, (3d ed., April 2022 update) ("[I]f the jurisdiction-invoking federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Furthermore, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

The court believes that the balance of factors set forth in *Carnegie-Mellon* weighs in favor of declining supplemental jurisdiction here. First, declining supplemental jurisdiction over the remaining claims would facilitate judicial economy. Given that this case lacks complete diversity, the state law claims would be fully litigated in state court, thereby avoiding any piecemeal litigation in the federal court that may overburden the court and cause unnecessary delay. *C.f. Flora v. Everest Wealth Mgmt., Inc.,* No. CV ELH-17-1621, 2017 WL 4280744 at *6 (D. Md. Sept. 26, 2017) ("Judicial economy does not weigh against remand. Plaintiff's only federal claim has been abandoned. And, because defendants cannot establish diversity jurisdiction, it is not likely that this case will return to federal court.").

Furthermore, the court finds that declining to exercise supplemental jurisdiction would promote comity since the remaining claims are wholly based on state law. The Fourth Circuit has noted that "our precedents evince a strong preference that state law issues be left to state courts . . . ." *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010).

As to convenience and fairness to the parties, the court notes that this case is in the very early stages of litigation. There has been no discovery, and "no matters will remain under consideration after this Court issues its decision." *Yin v. CTI Consultants, Inc.*, Civil Action No. 3:17-cv-296, 2018 WL 1569486 at *10 (E.D. Va. Mar. 30, 2018). The court does not believe that

it would be particularly inconvenient to the parties to litigate these issues in state court; indeed, Conlon originally filed her claims against Baber and Wright in state court, and the majority of the defendants are citizens of Virginia.  (*See* Compl. 1 n.1; ¶¶ 1–4, 11.)  The court recognizes that the dismissal of these claims may seem unfair to Conlon since she had to non-suit her claims in state court before filing this action.  The court also acknowledges the significant amount of time and effort Conlon has expended in responding to and litigating these motions.  On balance, though, the other *Carnegie-Mellon* factors outweigh any unfairness to Conlon.

For all these reasons, the court declines to exercise supplemental jurisdiction over Conlon's state-law claims.  The claims against Baber, Wright, Lee BHM Corp., Keen Communications, LLC, The Rowman & Littlefield Publishing Group, Inc., Menasha Ridge Press, Inc., The Mountaineers, and the Potomac Appalachian Trail Club will be dismissed without prejudice.

### III.  CONCLUSION

For the foregoing reasons, the court will grant the United States' motion to dismiss Counts I, II, and III and will dismiss the former two claims without prejudice and the latter with prejudice.  The court will decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss the claims without prejudice.

Entered: January 25, 2024.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

13